IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

BRIAN JUDAH MICHALEK                                      PLAINTIFF

V.                          NO. 4:11CV00685-JMM-JTR

PATRICK LUNSFORD, et al.                                  DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommendation has been sent to United States District Judge James M. Moody.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201-3325

## I. Introduction

In this *pro se* § 1983 action, Plaintiff alleges that, while he was a pretrial detainee in the Saline County Detention Facility (SCDF), Defendant Patrick Lunsford used excessive force against him. Specifically, Plaintiff asserts that Lunsford struck him on the left side of the head, pushed him down toward the floor, and slammed his knee into Plaintiff's shoulder and the side of his face, causing "rip[p]ing of the skin" and bruising of the shoulder and face. He also asserts a claim against Defendant

Sheriff Bruce Pennington because, when he heard about what had happened to Plaintiff, he said he "couldn't control what his deputies did when he wasn't there." (Docket entry #2, at 5.)

Defendants have filed a Joint Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.  (Docket entries #33, #34, #35.)  On January 27, 2012, the Court entered an Order directing Plaintiff to file a Response within thirty days.[1]  (Docket entry #36.)  He elected not to do so.[2]

For the reasons that follow, the Court recommends that: (1) Defendants' Joint Motion for Summary Judgment be denied; and (2) counsel be appointed to represent Plaintiff and file an Amended Complaint clarifying his claims.

## II.  Discussion

### A.    Failure to Exhaust Administrative Remedies.

In Defendants' Joint Motion for Summary Judgment and Brief in Support, they argue that they are entitled to judgment, as a matter of law, because Plaintiff failed to

---

[1]The Order was mailed to Plaintiff at the address he had provided but was returned "undeliverable."  On February 8, 2012, Plaintiff notified the Court that his address had changed.  The same day, the Clerk mailed another copy of the Order to Plaintiff at his new address.  (Docket entries #37-#40.)

[2]The case is set for a bench trial, before United States District Judge James M. Moody, during the week of May 14, 2012.  Judge Moody has referred all pretrial matters and decisions to the undersigned United States Magistrate Judge.  (Docket entry #22.)

exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).[3]  In pertinent part, the PLRA provides that:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A prisoner's failure to exhaust administrative remedies is an affirmative defense which Defendants must plead and prove.  *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

According to the Affidavit of Sgt. Michael Richards, Plaintiff was incarcerated in the SCDF from January 27, 2011, to July 12, 2011.[4]  (Richards Aff. ¶ 2 & Ex. C.) Plaintiff alleges that the excessive force incident occurred the third weekend in February, or sometime in March, 2011.  (Docket entries #2, at 5; #21, at 1.)  The SCDF grievance policy requires that a grievance be filed "promptly" after an incident. (Richards Aff. ¶ 4 & Ex. B.)  Sgt. Richard states that Plaintiff's inmate file and grievance file contain no record of him filing any grievances during his detention in the SCDF.  (*Id.* ¶ 5 & Ex. C.)

On July 12, 2011, Plaintiff was transferred from the SCDF to the Arkansas

---

[3]Summary judgment should be granted if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

[4]Sgt. Richards' Affidavit and its exhibits appear at docket entry #41-1.

State Hospital (ASH) "to be held without bond." (*Id.* ¶ 2 & Ex. C.) On September 15, 2011, Plaintiff filed this § 1983 action. At that time, he had been confined in the ASH for over sixty days.[5] (Docket entry #2, at 3.)

The Court has electronically accessed the records of Plaintiff's relevant criminal proceedings in Saline County Circuit Court. *See State v. Michalek*, No. 63CR-10-525.[6] On November 9, 2010, the Saline County Circuit Court ordered Plaintiff to undergo a mental evaluation. (*See* Court Ex. 1.) On March 24, 2011 – only a short time after the alleged excessive-force incident giving rise to this § 1983 action – Plaintiff underwent a forensic evaluation by Dr. Nicholaus Paal.[7] (*See* Court Ex. 2, at 3.) In that evaluation, Dr. Paal noted that Plaintiff's "reality contact appeared tenuous at times," his thought processes were "frequently rather unusual and difficult to follow," and he "verbalized some delusional beliefs." Dr. Paal diagnosed Plaintiff with a psychotic disorder, and expressed the opinion that Plaintiff was not fit to

---

[5] Once Plaintiff entered the ASH, psychologists adjusted and changed Plaintiff's medications for his psychotic disorders, which were causing him to lose contact with reality and experience "delusional beliefs." Plaintiff's ability to draft and file his § 1983 Complaint, after being in the ASH for sixty days, suggests that his medications improved his mental condition.

[6] The Court takes judicial notice of the Saline County Circuit Court documents in that case.

[7] Dr. Paal's complete evaluation is not available to the Court. However, the results of his evaluation were summarized in a "Forensic Reevaluation" by Michael J. Simon, Ph.D., dated September 7, 2011, and docketed with the circuit court on September 20, 2011. (Court Ex. 2.)

proceed with his pending criminal proceedings "due to his delusional beliefs and his erratic behavior."[8]  (*Id.*)

On April 6, 2011, the Saline County Circuit Court entered a "Not Fit to Proceed Commitment Order."  (Court Ex. 3.)   The court determined that, based on Dr. Paal's evaluation, Plaintiff lacked the fitness to proceed with his criminal proceedings, suspended the proceedings, and committed him to the ASH for "detention, care and treatment until restoration of fitness to proceed."  (*Id.* ¶ 2.)   Thus, at the time of the alleged excessive-force incident and during the weeks that followed,  it seems clear that Plaintiff was suffering from psychotic disorders, which caused him at times to have only tenuous contact with reality and to express delusional beliefs.

On July 12, 2011, Plaintiff was admitted to the ASH.  On September 7, 2011, Michael J. Simon, Ph.D., Supervising Forensic Psychologist, prepared a "Forensic Reevaluation," based on Plaintiff's treatment records, a clinical interview, and other materials. (Court Ex. 2, at 1-2.) According to Dr. Simon's report, Plaintiff was "quite suspicious and oppositional" upon admission to the ASH and exhibited "grandiose delusions."  *He was placed on anti-psychotic medication.*[9]  (*Id.* at 4-5.)

---

[8]A psychologist at the ASH later diagnosed Plaintiff as having schizoaffective disorder (bipolar type) and personality disorder NOS (antisocial traits).  (Court Ex. 2, at 1-2, 6.)

[9]Dr. Simon noted that this was Plaintiff's second admission to the ASH. According to the report, Plaintiff underwent a forensic evaluation in July 2004, was

Dr. Simon diagnosed Plaintiff with schizoaffective disorder (bipolar type) and personality disorder NOS (antisocial traits).  (*Id.* at 1-2, 6.)  He found that Plaintiff *now* had the capacity to understand the criminal proceedings against him and to assist effectively in his own defense, *but*, at the time of the charged offenses, he lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.  (*Id.* at 6-7.)

On September 20, 2011, the Saline County Circuit Court entered a "Judgment of Acquittal Because of Mental Disease or Defect."  The Judgment also committed Plaintiff to the ASH for further treatment and evaluation.  (Court Ex. 4.)  Thus, at the time of the alleged excessive-force incident, Plaintiff had long-standing, serious mental health issues.

The PLRA requires exhaustion of administrative remedies "as are available."[10] 42 U.S.C. § 1997e(a).  Although the PLRA does not provide a definition, "the plain

---

diagnosed with a psychotic disorder, and was found not fit to proceed with then pending criminal proceedings in Pulaski County Circuit Court.  He was admitted to the ASH for detention, care and treatment until restoration of fitness.  According to the report, Plaintiff was later adjudicated *not guilty by reason of insanity* on those charges.  On February 9, 2005, he was granted conditional release from the ASH but apparently continued to receive mental health treatment.  (Court Ex. 2, at 2-3.)

[10]Although Plaintiff was a patient in the ASH at the time he initiated this action, for purposes of the PLRA, he was still a "prisoner" because he was "incarcerated or detained in any facility" and "accused of ... violations of criminal law."  *See* 42 U.S.C. § 1997e(h) (defining "prisoner" under PLRA).

meaning of the term 'available' is 'capable of use for the accomplishment of a purpose: immediately utilizable ... accessible.'" *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (citation omitted).  Courts have held that, to satisfy the burden of showing that a § 1983 complaint should be dismissed for non-exhaustion of "available" remedies, an incarcerating facility's officials must demonstrate "not only that [a prisoner] had access to [the facility's] administrative grievance process ..., but also that he was actually *capable* of filing such a grievance." *Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 625 (6th Cir. 2011) (emphasis in original); *Jenkins v. Federal Bureau of Prisons*, No. CA3:10-1968-CMC-JRM, 2011 WL 4482074, at *3 (D.S.C. Sept. 26, 2011); *see also Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003) ("[O]ne's personal inability to access the grievance system could render the system unavailable."), *overruled by implication on other grounds*, *Jones*, 549 U.S. at 216.

Physical or mental infirmities may render administrative remedies "unavailable," and excuse a prisoner from complying with the PLRA's exhaustion requirement. *Braswell*, 419 F. App'x at 625-26 (genuine factual dispute existed where inmate's mentally impaired condition raised "substantial doubt as to whether [he] was mentally capable of filing a grievance"); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) (factual issue existed regarding whether exhaustion was excused because

prisoner with broken arm was unable to fill out a grievance form); *Days*, 322 F.3d at 867-68 (remedies were "unavailable" when inmate's grievance was rejected as untimely and untimeliness was due to a physical injury); *Jenkins*, *supra* at *5 (remedies were "unavailable" during inmate's hospitalization and incapacitation due to second and third degree burns over a significant portion of his body); *Johnson-Ester v. Elyea*, No. 07-CV-4190, 2009 WL 632250, at *6-*7, *9 (N.D. Ill. Mar. 9, 2009) (remedies were "unavailable" where prisoner's "physical and mental condition rendered him unable to invoke and exhaust any administrative procedures on his own"); *Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1019-20 (D. Colo. 2007) (refusing to dismiss for non-exhaustion where prisoner was transferred to mental institution shortly after alleged use of excessive force, remained in a psychiatric ward for six months, and alleged he was incompetent during the period for filing a grievance and mentally unable to complete the grievance process).

Based on the medical records in Plaintiff's Saline County Circuit Court criminal case, it seems very unlikely that Plaintiff was mentally capable of accessing SCDF's grievance procedures. At the very least, there is a "genuine dispute" about the "availability" of those grievance procedures to Plaintiff.

Defendants have failed to satisfy their burden of establishing that Plaintiff failed to exhaust *available* administrative remedies. Thus, they are not entitled to summary

judgment on that issue.

### B.   <u>Supervisory Liability of Defendant Pennington.</u>

Defendants also argue that Defendant Pennington is entitled to summary judgment because he was not personally involved in the alleged incident and there is no evidence of a continuing violation.  A supervising officer can be liable for an inferior officer's conduct only "if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation."  *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citations omitted).

Plaintiff's Complaint does not specify whether Defendant Pennington is being sued in his individual or his official capacity, nor does Plaintiff elaborate on the allegations against him.[11]  Given the serious questions surrounding Plaintiff's mental capacity at the time he initiated this action, the Court recommends that a ruling on Defendant Pennington's request for summary judgment be held in abeyance until counsel is appointed for Plaintiff and he or she has an opportunity to consider whether to amend this claim or abandon it.

### C.   <u>Availability of Relief.</u>

The only relief sought by Plaintiff is as follows: "I want Saline County Sheriff's

---

[11]*See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (if complaint is silent about capacity in which defendant is sued, court interprets complaint as including only official-capacity claims).

office to drop the charges against me in exchange I will drop this case." (Docket entry #2, at 6.)  Defendants argue that this request must be denied because any decisions about bringing or dropping charges are made by the prosecutors and the court system, not these Defendants.

The Court agrees that these Defendants cannot provide the specific relief requested.  However, a *pro se* complaint and other pleadings must be liberally construed.  *Whitson v. Stone County Jail*, 602 F.3d 920, 922 n.1 (8th Cir. 2010). Plaintiff's factual allegations are directed toward an alleged incident of excessive force while he was a pretrial detainee, not the validity of the criminal charges against him.  Again, this is an issue that should be clarified and developed by appointed counsel.

### D.   <u>Appointment of Counsel.</u>

The record in this case strongly suggests that, at the time of the alleged incident and thereafter, Plaintiff was suffering from (and may still be suffering from) significant mental limitations due to diagnosed psychotic disorders.  The nature and extent of these limitations is unclear.[12]  Thus, the Court believes that counsel should be appointed to represent Plaintiff and file an Amended Complaint on his behalf.

---

[12]The Court has outlined how these mental limitations may well have made the grievance procedure unavailable to Plaintiff.  These same mental limitations, however, may also make it very difficult for Plaintiff to maintain his burden of proving his excessive-force claim against Defendant Lunsford.

## III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' Joint Motion for Summary Judgment (docket entry #33) should be DENIED in its entirety, without prejudice to resubmission after the issues in this case have been further developed.

2.      Plaintiff should be allowed to proceed with his claims.  Counsel should be appointed to represent him and directed to file an Amended Complaint on his behalf.

DATED THIS 5th  DAY OF April, 2012.


_____
UNITED STATES MAGISTRATE JUDGE

## Report Selection Criteria

**Case ID:**          63CR-10-525
**Citation No:**
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**     63CR-10-525 - STATE V BRIAN JUDAH MICHALEK
**Filing Date:** Thursday , September 09th, 2010
**Type:**        DI - CRIMINAL DIRECT FILED
**Status:**      OPEN - CASE OPEN
**Images:**

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | | | DEFENDANT | 3054152 | **MICHALEK, BRIAN JUDAH** |
| | (501)539-8072 | | | **Aliases:** | *none* |
| | | | | | |
| 2 | | | JUDGE | 7965468 | **22ND CIRCUIT DIVISION 1** |
| | | | | **Aliases:** | *none* |
| | | | | | |

## Violations

MICHALEK, BRIAN JUDAH

**Violation: 1**          **Citation#:**          **Age at Violation**: 48    **Plea**:
**5-36-106    FELONY THEFT BY RECEIVING; FC    Disp**:
**Level**:   FC    CLASS C FELONY
**Violation Date**: 14-JUN-10
**Violation Time**: 08:00:00

*Court Ex. 1*

MICHALEK, BRIAN JUDAH

**Violation: 2**        **Citation#:**        **Age at Violation**: 48     **Plea**:
**5-73-103**     **POSSESS FIREARMS BY CERTAIN PERSONS; FD**     **Disp**:
**Level**:    FD    **CLASS D FELONY**
**Violation Date**: 14-JUN-10
**Violation Time**: 08:00:00

MICHALEK, BRIAN JUDAH

**Violation: 3**        **Citation#:**        **Age at Violation**: 48     **Plea**:
**5-13-301(a)**     **TERRORISTIC THREATENING - 1ST DEGREE; FD**     **Disp**:
**Level**:    FD    **CLASS D FELONY**
**Violation Date**: 15-JUN-10
**Violation Time**: 08:00:00

**Sentence**

No Sentence Info Found.

**Docket Entries**

| Filing Date | Description | Name | Monetary |
|---|---|---|---|
| 09/09/2010 08:00 AM | MOF DIRECT | MICHALEK, BRIAN JUDAH | |
| **Entry:** | TRIAL TYPE: | | |
| **Images** | No Images | | |
| | | | |
| 09/09/2010 08:00 AM | CRIMINAL INFORMATION SHEET | MICHALEK, BRIAN JUDAH | |

| Entry: | *none.* | |
|---|---|---|
| Images | No Images | |

| 09/09/2010 08:00 AM | CRIMINAL INFORMATION | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| Entry: | CR2010-525-1 - POSSESSION OF FIREARM - 1067450 - 20100909 | | |
| Images | CR2010-525-1;1067450;20100909; | | |

| 10/14/2010 08:00 AM | ORDER OTHER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| Entry: | CR2010-525-1 - APPEARANCE ORDER - 1078056 - 20101014 | | |
| Images | CR2010-525-1;1078056;20101014; | | |

| 10/19/2010 08:00 AM | MOTION DISCOVERY | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| Entry: | CR2010-525-1 - MOTION FOR DISCOVERY - 1078754 - 20101019 | | |
| Images | CR2010-525-1;1078754;20101019; | | |

| 10/25/2010 08:00 AM | MOTION DISCOVERY | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| Entry: | CR2010-525-1 - DISCOVERY MOTION - 1081508 - 20101025 | | |
| Images | CR2010-525-1;1081508;20101025; | | |

| 10/25/2010 08:00 AM | RESPONSE | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| Entry: | CR2010-525-1 - RESPONSE TO DISCOVERY MOTION - 1081507 - 20101025 | | |
| Images | CR2010-525-1;1081507;20101025; | | |

| 11/09/2010 08:00 AM | ORDER MENTAL EXAMINATION | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| Entry: | CR2010-525-1 - ORDER FOR MENTAL EVALUATION - 1087994 - 20101109 | | |
| Images | CR2010-525-1;1087994;20101109; | | |

| 02/07/2011 08:00 AM | ORDER OTHER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| **Entry:** | CR2010-525-1 - ARRAIGNMENT ORDER - 1107531 - 20110207 | | |
| **Images** | CR2010-525-1;1107531;20110207; | | |

| 03/11/2011 08:00 AM | FILING - OTHER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| **Entry:** | CR2010-525-1 - TRANSPORT ORDER - 1114538 - 20110311 | | |
| **Images** | CR2010-525-1;1114538;20110311; | | |

| 04/05/2011 08:00 AM | ORDER OTHER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| **Entry:** | CR2010-525-1 - ARRAIGNMENT ORDER - 1120934 - 20110405 | | |
| **Images** | CR2010-525-1;1120934;20110405; | | |

| 04/06/2011 08:00 AM | ORDER OTHER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| **Entry:** | CR2010-525-1 - NOT FIT TO PROCEED COMMITMENT ORDER - 1120922 - 20110406 | | |
| **Images** | CR2010-525-1;1120922;20110406; | | |

| 04/11/2011 08:00 AM | LETTER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| **Entry:** | CR2010-525-1 - LETTER FROM DHS - 1121191 - 20110411 | | |
| **Images** | CR2010-525-1;1121191;20110411; | | |

| 06/24/2011 08:00 AM | FILING - OTHER | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|
| **Entry:** | CR2010-525-1 - SUBPOENA ISSUED - 1144186 - 20110624 | | |
| **Images** | CR2010-525-1;1144186;20110624; | | |

| 06/27/2011 08:00 AM | SUBPOENA SERVED | MICHALEK, BRIAN JUDAH | |
|---|---|---|---|

| Entry: | CR2010-525-1 - SUBPOENA SERVED - 1144648 - 20110627 | | |
|---|---|---|---|
| Images | CR2010-525-1;1144648;20110627; | | |

| | | | |
|---|---|---|---|
| 09/16/2011 08:00 AM | LETTER | MICHALEK, BRIAN JUDAH | |
| Entry: | CR2010-525-1 - LETTER - 1165751 - 20110916 | | |
| Images | CR2010-525-1;1165751;20110916; | | |

| | | | |
|---|---|---|---|
| 09/19/2011 08:00 AM | ORDER MENTAL EXAMINATION | MICHALEK, BRIAN JUDAH | |
| Entry: | CR2010-525-1 - ORDER MENTAL EXAMINATION - 1166483 - 20110919 | | |
| Images | CR2010-525-1;1166483;20110919; | | |

| | | | |
|---|---|---|---|
| 09/20/2011 08:00 AM | FORENSIC EVALUATION | MICHALEK, BRIAN JUDAH | |
| Entry: | CR2010-525-1 - FORENSIC EVALUATION - 1166664 - 20110920 | | |
| Images | CR2010-525-1;1166664;20110920; | | |

| | | | |
|---|---|---|---|
| 09/20/2011 08:00 AM | FORENSIC EVALUATION | MICHALEK, BRIAN JUDAH | |
| Entry: | CR2010-525-1 - FORENSIC EVALUATION - 1167213 - 20110920 | | |
| Images | CR2010-525-1;1167213;20110920; | | |

| | | | |
|---|---|---|---|
| 09/20/2011 08:00 AM | JUDGMENT/DECREE/ORDER | MICHALEK, BRIAN JUDAH | |
| Entry: | CR2010-525-1 - JUDGMENT/DECREE/ORDER - 1167212 - 20110920 | | |
| Images | CR2010-525-1;1167212;20110920; | | |



Arkansas Department of Human Services
Division of Mental Health Services
Arkansas State Hospital

FILED
SALINE COUNTY
CIRCUIT
2011 SEP 20 AM 9: 45
BY F.A.

Page | 1

# FORENSIC REEVALUATION

**IDENTIFYING INFORMATION:**
**DEFENDANT:** Brian Michalek
**DEFENDANT'S HOSPITAL:** 614525
**DATE OF BIRTH:** 8/04/61
**DATE OF ADMISSION:** 7/12/11
**REFERRED BY:** Circuit Court of Saline County
**CHARGES AND DOCKET NUMBER:** Felon in Possession of a Firearm, Terroristic Threatening, and Theft by Receiving-CR2010-525-1
**DATE OF COMMITMENT ORDER:** 4/06/11
**PLACE OF EXAMINATION:** Forensic Unit, Arkansas State Hospital
**DATE OF EXAMINATION:** 9/06/11
**DATE REPORT SUBMITTED:** 9/07/11
**REFERRAL ISSUES:** Mr. Michalek was admitted to the Forensic Unit of the Arkansas State Hospital on a Not-Fit-To-Proceed Commitment Order for detention, care, and treatment until he is fit to proceed. At the present time, Mr. Michalek's Treatment Team has requested that I reevaluate his competency to stand trial, and address the issue of criminal responsibility if he is found fit to proceed.

## SUMMARY OF OPINIONS:
1) At the time of this examination, Mr. Michalek did not lack the capacity to understand the proceedings against him and assist effectively in his own defense.

2) At the time of the examination he did have a mental disease. His diagnosis was:

   Axis I:   295.70  Schizoaffective Disorder, Bipolar Type
   Axis II.  305.20  Personality Disorder NOS (antisocial traits)

3) At the time of the alleged conduct, should the fact finder conclude that he committed the charged offenses:
   1. He did have a mental disease.
   2. He lacked the capacity to appreciate the criminality of his conduct.
   3. He lacked the capacity to conform his conduct to the requirements of the law.



Court
Ex. 2

## THE NATURE OF THE EXAMINATION:
**DISCLOSURE OF THE PURPOSE AND THE VOLUNTARY, NON-CONFIDENTIAL NATURE OF THE EXAMINATION:** At the outset of the examination, Mr. Michalek was informed of the nature and purpose of the examination, that his participation in the examination was not confidential, that a report of the examination would be made to the court and sent to his lawyer and the prosecutor, and that the examiner's testimony may be required in any court proceedings in his case. He was informed that he did not have to answer any questions or make any self-incriminating statements. He indicated that he understood and was willing to be interviewed.

Page | 2

### SOURCES OF INFORMATION:
Clinical Interview with Mr. Michalek conducted on 9/06/11.
Administration of the Competency to Stand Trial Assessment Instrument.
Psychiatric Evaluation conducted by Ann Guthrie, M.D.
Psychosocial History completed by Ricky Lockwood, LCSW.
Observations made by nursing staff on the Forensic Unit of the Arkansas State Hospital.
Review of previous Arkansas State Hospital records.
Review of Forensic Evaluation conducted by Dr. Ed Stafford on 7/01/04.
Review of Forensic Reevaluation conducted by Dr. Michael J. Simon on 11/04/04.
Forensic Evaluation conducted on 3/24/11 by Dr. Nicholaus Paal.
Legal information obtained from the Saline County Prosecuting Attorney's Office.

## HISTORY:

This is Michalek's second admission to the Arkansas State Hospital. He was previously admitted on 9/08/04, pursuant to ACA 5-2-310, for detention care and treatment until restoration of his fitness to proceed. This order was issued after the court received a Forensic Evaluation, conducted by Dr. Ed Stafford on 7/01/04, with regard to charges of Residential Burglary (2 counts), Battery in the Second Degree, Terroristic Threatening in the First Degree, Fleeing and Theft of Property. Dr. Stafford described Mr. Michalek as having a delusional system which interfered with his ability to understand the proceedings against him and to assist effectively in his own defense. Thus, he opined that Mr. Michalek was not fit to proceed and gave him the following diagnosis: Axis I. Psychotic Disorder NOS; History of Methamphetamine Abuse; Rule out Substance Induced Psychotic Disorder  Axis II. Deferred.

Following Mr. Michalek's 2004 admission to the Forensic Unit of the Arkansas State Hospital he was treated on an inpatient basis under the care of Dr. Albert Kittrell. His primary problem was identified as impaired judgment secondary to his delusions. He was placed on Risperdal (i.e. an antipsychotic medication) and remained on this medication throughout the course of his hospitalization. While he developed little insight with regard to his grandiose delusions, he began to discuss them less frequently. His suspiciousness regarding the motives of his appointed attorney appeared to diminish, and he indicated that he believed he could trust her and accept her advice. While Mr. Michalek was not willing to acknowledge that his thinking was delusional, and did admit that he was "not in my right mind" at the time of the alleged crimes and that an insanity defense would be appropriate. A Forensic Reevaluation was

completed on 11/09/04 which opined that Mr. Michalek was competent to stand trial, but not responsible for his alleged criminal behavior. He was given the following diagnosis: Axis I. Delusional Disorder, Grandiose Type; Cannabis Abuse Axis II. Personality Disorder NOS (antisocial traits). Pursuant to this evaluation, the Circuit Court of Pulaski County adjudicated Mr. Michalek as not guilty by reason of insanity. On 2/09/05 he was granted a conditional release from the Arkansas State Hospital, under Act 911, and placed at the Arkansas Partnership Page | 3 Program in Little Rock. Mr. Michalek reported that he his stay at APP lasted less than a year, because the program was discontinued. He related that he spent the next year at a group home in central Arkansas and was then moved to an apartment which he shared with another mental health patient. He apparently attended the Day Treatment Program at the Little Rock Community Mental Health Center. He reported that he initially participated in this program full-time, but later moved to part-time status so he could work and attend classes at UALR. He reported that he successfully completed the 911 program on 2/07/10. He apparently did quite well as there is no evidence that he violated the conditions of his release. Mr. Michalek reported that after completion of the 911 program he was seen by a doctor in Benton, AR who continued his prescriptions for Risperdal and Adderall.

Mr. Michalek was seen for a Forensic Evaluation with regard to the present charges on 3/24/11 by Dr. Nicholaus Paal. Mr. Michalek was generally pleasant and participated throughout the evaluation. While he was oriented, his reality contact appeared tenuous at times. His thought processes were frequently rather unusual and difficult to follow. He verbalized some delusional beliefs and information obtained from the jail revealed he frequently wrote letters to Hollywood stars addressing them in an overly familiar manner. Dr. Paal opined that Mr. Michalek was not fit to proceed due to his delusional beliefs and his erratic behaviors. He gave him the following diagnosis: Axis I. Psychotic Disorder NOS Axis II. No Diagnosis. Pursuant to Dr. Paal's report, the Circuit Court of Saline County issued an order committing Mr. Michalek to the Arkansas State Hospital for detention, care and treatment until restoration of his fitness to proceed.

Mr. Michalek apparently has a history of substance abuse. When evaluated at the Arkansas State Hospital in 2004 he related that he had used marijuana on a daily basis since 1988. He also reported regular use of alcohol, and sporadic use of cocaine and methamphetamines. However, he related that he has not used drugs or alcohol since being released from the Arkansas State Hospital under Act 911 in 2004.

Mr. Michalek apparently has a rather extensive history of legal difficulties. He reported that he was charged with Arson in 1980 and subsequently convicted and sentenced to 15 years in prison. He related that while in prison he stole a truck, while involved in a work release program, and was sentenced to an additional 4 years. He reported that he was paroled on 8/25/88, but was charged with a parole violation in 1993 for leaving the state of Arkansas. He stated that in the summer of 1995 he spent 25 days in the Little Rock jail after being charged with Theft of Services for illegally hooking up his electricity. He also acknowledged several other misdemeanor arrests prior to 2004. As discussed above, in 2004 he was arrested on several charges, but was eventually acquitted by reason of insanity. He reported no additional arrests until the current charges.

## FORENSIC EXAMINATION:

**OFFICIAL ACCOUNT OF THE OFFENSES:** Mr. Michalek has officially been charged with Felon in Possession of a Firearm, Theft by Receiving, and Terroristic Threatening. According to information obtained from the Saline County Prosecuting Attorney's Office, on 6/14/10 Officer Nathan Johnston was dispatched in reference to a man chasing a female down the service road of I-30 westbound at exit 123. He made contact with the female being chased, 15 year old Kristen Higgins, who reported that she needed help because the man (subsequently identified as Brian Michalek) chasing her was "crazy". Ms. Higgins explained that she accompanied Mr. Michalek to Wal-Mart when he started acting weird and threatened to kill her. They subsequently left the Wal-Mart and Mr. Michalek drove down the service road in the wrong direction and then started to get on the interstate the wrong way, almost colliding with a semi-truck. As they were getting on the interstate, she was able to grab the steering wheel and then take the keys out of the ignition. She then got out of the vehicle and began running to Wal-Mart to get away from Mr. Michalek. When Officer Johnston first attempted to speak to Mr. Michalek, he said Ms. Higgins was crazy but stated "I don't know" when asked what happened. He subsequently starred off in the distance and did not respond to further questions. After Mr. Michalek was placed into custody, Officer Johnston again attempted to speak to Mr. Michalek. He reported that Mr. Michalek "just rambled saying I didn't have a magnifying glass". A .40 caliber hand gun was subsequently found in the vehicle Mr. Michalek was driving. It was subsequently determined that the gun belonged to Faith Higgins (Kristen Higgin's mother) and had apparently been stolen.

**DEFENDANT'S ACCOUNT OF THE OFFENSES:** Mr. Michalek appeared to be well aware of the charges he is presently facing, but basically denied committing the alleged crimes. He explained that on the day of the alleged crimes, he had gone shopping with his niece (i.e. Kristen Higgins) and his brother, Darren. He related that after they left Wal-Mart, he planned on taking Kristen to her mother's home. He stated that Darren was driving and, because he was unfamiliar with the roads, he made a wrong turn and began driving the wrong way on the access road to the highway. He attempted to turn around, but the engine of his car stalled. Mr. Michalek related that he and Kristen left his brother with the car and then ran back to the Wal-Mart to try and get some assistance. They were approached by a police officer who asked Mr. Michalek what the problem was and why he was breathing so hard. He explained that he needed a "jump" and stated that the officer then drove him back to the stalled vehicle. He stated by this time his brother had left the scene and when the officer searched the vehicle he found a hand gun. He explained that the gun belonged to Kristen's mother, but they charged him with Felon in Possession of a Firearm. When asked about the other charges the stated "They just put all those charges on me. That's the way Bryant is. They just like to charge people with a lot of junk". When asked specifically if he had threatened to kill Kristen, he stated "I wouldn't hurt my niece. I wouldn't hurt anybody." He went on to describe her as "an habitual liar" and "a problem child".

## CLINICAL EVALUATION:

Upon admission to the Forensic Unit, Mr. Michalek was noted to be quite suspicious and oppositional. He refused to answer questions, without his attorney present, and would not sign release of information forms. He exhibited grandiose delusions as he claimed to be in law

school and reported he was making $50,000 a week prior to his arrest. He reportedly called a number of local businesses, on the unit phone, and told another patient he owned them. He was overheard attempting to make plane reservations and trying to buy car dealerships around the country. His speech was noted to be rapid and rambling. Despite this, Mr. Michalek was agreeable to taking antipsychotic medication (i.e. Risperdal) and his condition was noted to slowly improve. He became more cooperative and appropriate in his interactions with staff and peers. He continued to write some innappropriate letters and talk to other patients about his grandiose-sounding plans to buy property. However, he did demonstrate a good understanding of the legal system and, in fact, gave other patients advice on legal matters. Thus, he was referred from the present reevaluation.

Mr. Michalek presented himself, for the current reevaluation, as a balding, moderately obese, 50 year old white male. He was friendly and appeared to do his best to cooperate with the evaluation process. He was alert and oriented, and was responsive to the questions he was asked. He spoke in a somewhat rapid, and occasionally, rambling manner. However, he could be redirected to the topic at hand without too much difficulty. He exhibited no unusual or bizarre behavior, and there was no evidence that he was experiencing hallucinations of any type. He was willing to acknowledge that he has had delusional beliefs in the past, but stated that he is no longer delusional. Specifically, he stated that in the past he had believed he was a Drug Enforcement Agent and was being following by the police. He was adamant in stating that he no longer believes this and is aware that his previous beliefs were due to mental illness. When asked about his previous grandiose plans of building a NASCAR track, he acknowledged that this is something he would still like to do but added "I'm not even worried about NASCAR right now. I'm just worried about taking care of my legal problems". He did acknowledge that the has written letters to numerous philanthropists and celebrities in an attempt to get sponsorships for his planned race track. However, he was able to explain this behavior in a relatively rational manner stating "I don't really expect a response, but it doesn't hurt to try. Maybe one day someone will say yes". He then related that he had read that Warren Buffet has "a 36.7 billion dollar surplus" stating "It doesn't hurt to send him a letter and ask".

Mr. Michalek was administered the Competency to Stand Trial Assessment Instrument to assess his understanding of court procedures and his own legal situation. He was able to demonstrate a good understanding of the various participants in the court process. For example, he stated that the role of his attorney was "to defend me", while the prosecutor's role was "to present the evidence of what happened to the jury". He explained that a judge "Makes a ruling for or against you based on the evidence", while a jury "listens to the evidence and decides if you're guilty or not guilty". He was aware that his attorney would talk for him in court and that a witness would "Give their version of what happened". Mr. Michalek indicated that he was not guilty of the charges, but indicated that he would be willing to work out a plea bargain agreement. He stated that he was offered 3 years, but indicated that he believed he could get a better offer explaining "That was just their first offer". He stated that while he would rather go back to court and work out a plea bargain agreement, he was not adverse to entering a plea of not guilty by reason of insanity if this is what the Arkansas State Hospital recommended. He explained "I'm okay either way. I just want it over with as quick as possible". Mr. Michalek stated that he currently does not have a public defender assigned to him, but has contacted a private attorney about taking his case. He does appear to have the ability to work effectively

with an attorney and demonstrated a good understanding of his legal options and the consequences of pleading insanity versus accepting a plea bargain offer. He is able provide a coherent version of the events which led to his arrest, although it does differ considerably from the official version. It is not entirely clear if this is simply self-protective or due to his impaired mental state at the time.

Page | 6

## FORENSIC OPINIONS:
### OPINION ON THE CURRENT MENTAL CONDITION OF THE DEFENDANT:
Axis I:  295.70 Schizoaffective Disorder, Bipolar Type
Axis II. 305.20 Personality Disorder NOS (antisocial traits)

The symptom picture exhibited by Mr. Michalek, while at the hospital, and prior to his admission appears most consistent with a diagnosis of Schizoaffective Disorder. This diagnosis requires both a disturbance in mood (ex. mania) as well as psychotic symptoms (ex. delusional beliefs). Another requirement, which Mr. Michalek has clearly exhibited, is the presence of delusional thinking, for at least 2 weeks, in the absence of prominent mood symptoms. Mr. Michalek has a history of substance abuse, but denies abusing drugs or alcohol since 2004. He appears to meet criteria for a personality disorder primarily due to his rather extensive history of legal difficulties.

### OPINION ON THE DEFENDANT'S CAPACITY TO UNDERSTAND THE PROCEEDINGS AGAINST HIM AND TO ASSIST EFFECTIVELY IN HIS OWN DEFENSE:
It is my opinion that at the time of the examination Mr. Michalek did not lack the capacity to rationally and factually understand the proceedings against him and assist effectively in his own defense. This is based on the following information:
1. His performance on the Competency to Stand Trial Assessment Instrument.
2. His performance in the Arkansas State Hospital's Competency Restoration Class.
3. He was noted to help other patients with legal issues.
4. He has previous experience with the legal system.
5. His mental condition has improved since his admission to the hospital..

### OPINION ON THE PRESENCE OR ABSENCE OF MENTAL DISEASE OR DEFECT AT THE TIME OF THE OFFENSES:
It is my opinion that at the time of the alleged conduct, should the fact finder conclude that he committed the charged offenses, he did have a have a mental disease. This is based on the following information:
1. Mr. Michalek has a documented history of mental disease which predates the alleged crimes.
2. The alleged victim, Kristen Higgins, told police officers that Mr. Michalek "started to act weird" and described him as "crazy"
3. According to one of the arresting officers, Nathan Johnston, Mr. Michalek "stood there and stared off into the distance" when he tried to question him. The officer also noted that "Michalek just rambled saying I didn't have a magnifying glass".
4. Mr. Michalek's reported behavior (i.e. driving the wrong way on the service road; almost hitting a semi-truck) appeared erratic and suggestive of mental illness.

**OPINION ON THE DEFENDANT'S CAPACITY TO APPRECIATE THE CRIMINALITY OF HIS CONDUCT AT THE TIME OF THE OFFENSES:** It is my opinion that at the time of the alleged conduct, should the fact finder conclude that he committed the charged offenses, he lacked the capacity to appreciate the criminality of his conduct. This opinion is based on the following evidence:

1. Mr. Michalek was suffering from a mental disease which prevented him from appreciating the criminality of his actions.
2. Mr. Michalek engaged in the alleged criminal behavior, in broad day light, with multiple witness likely present. This suggests that he did not fully appreciate the criminality of his actions.

**OPINION ON THE DEFENDANT'S CAPACITY TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF THE LAW AT THE TIME OF THE OFFENSES:** It is my opinion that at the time of the alleged conduct, should the fact finder conclude that he committed the charged offenses, he lacked the ability to conform his conduct to the requirements of the law. This opinion is based on the following evidence:

1. Mr. Michalek was suffering from a mental disease which prevented him from having volitional control of his behavior.
2. The erratic nature of Mr. Michalek's behavior (ex. driving the wrong way on the service road) is consistent with mental illness and suggests that he did not have the ability to conform his behavior.
3. The fact that Mr. Michalek engaged in the alleged criminal behavior in broad daylight, with witnesses present, suggests that he could not conform his conduct.


Michael J. Simon, Ph.D.
Supervising Forensic Psychologist
Forensic Services
Arkansas State Hospital

FILED
SALINE COUNTY
CIRCUIT CLERK

2011 APR -6 AM 10: 51

IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS
CRIMINAL DIVISON

STATE OF ARKANSAS                                          PLAINTIFF

BY: _____

V.                                    CR 2010-525-1

Brian Judah Michalek                                       DEFENDANT

DOB:

## NOT FIT TO PROCEED COMMITMENT ORDER

1.  Comes now on this day to be heard the Motion of the State, and from matters
    before the Court the Court DOTH FIND:

2.  That based on the evaluation performed by Nicholaus Paal Ph.D.
    at the Counseling Clinic, Inc. , it has been determined
    that the Defendant lacks the fitness to proceed at this time. Pursuant to
    A.C.A. Sec. 5-2-310, the proceedings against the Defendant are suspended
    and he/she is hereby committed to the custody of the Director of the
    Department of Human Services for detention, care and treatment until
    restoration of fitness to proceed.

3.  As required by A.C.A. Sec. 5-2-310, a copy of the report filed pursuant to
    A.C.A. Sec. 5-2-305 shall be attached to this Order of Commitment.

4.  The Director of the Department of Human Services, or his designee, is hereby
    ordered, pursuant to A.C.A. Sec. 5-2-310, to report back to this Court if within
    ten months the Defendant regains his fitness to proceed. Otherwise, the
    Department of Human Services is to report ten months from the date of this
    order whether:


Court
Ex. 3

a. The defendant's mental disease or defect is of a nature precluding restoration of fitness to proceed; and

b. The defendant presents a danger to himself or to the person or property of others.

IT IS SO ORDERED this 6 TH day of _April_, 20 11.

_____
Circuit Judge



FILED
SALINE COUNTY
CIRCUIT CT

IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS

FIRST DIVISION

2011 SEP 20 AM 9: 45

BY_____ **PLAINTIFF** E.A.

**STATE OF ARKANSAS**

V.                                           CR-2010-525-1 ✓

**BRIAN MICHALEK**                                               **DEFENDANT**
**DOB 08/04/1961**

### JUDGMENT OF ACQUITTAL BECAUSE OF MENTAL DISEASE OR DEFECT

Comes now on this day to be heard the Joint Motion of Andy Gill, Deputy Prosecutor and Brent Standridge, Defense Counsel, and from matters before the Court, the Court doth find:

1. That the above-named Defendant was charged with the criminal offenses of Terroristic Threatening and Felon in Possession of a Firearm, and is represented by Brent Standridge, Defense Counsel.

2. That the Defendant was examined by Michael J. Simon, Ph.D at the Arkansas State Hospital pursuant to A.C.A. § 5-2-305, to determine his capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.

3. That Dr. Simon has subsequently completed the evaluation pursuant to the Order of this Court, and the findings concerning the Defendant's capacity or fitness to proceed are made a part of this Order.

4. That based on the evaluation of Dr. Simon, the State of Arkansas agrees that it would be in the best interest of justice that the Defendant be acquitted.

5. That this offense involved bodily injury to another person or serious damage to the property of another or involved a substantial risk of such injury or damage. That Defendant remains affected by mental disease or defect. That pursuant to A.C.A. § 5-2-314, the Defendant is committed to the custody of the Department of Human Services for further examination by a psychiatrist or licensed psychologist.

6. That the Department of Human Services shall file the psychiatric or psychological report with a circuit court having jurisdiction within thirty (30) days following receipt of this Order.

7. That pursuant to A.C.A. § 5-2-314, a hearing shall take place not later than (10) days following the filing of the above report. If the acquittee is in need of Counsel for said hearing, it shall be appointed immediately upon filing of the original petition or report.



Court
Ex. 4



7. That pursuant to A.C.A. § 5-2-314, a hearing shall take place not later than (10) days following the filing of the above report. If the acquittee is in need of Counsel for said hearing, it shall be appointed immediately upon filing of the original petition or report.

WHEREFORE, this Court finds that at the time of the offense, the Defendant lacked the capacity, as a result of mental disease or defect, to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. In addition, this Court also finds that the Defendant currently has the capacity to understand the proceedings against him and can assist effectively in his own defense. The Defendant should thus be acquitted of the offense by reason of his mental disease or defect and committed to the care and custody of the Department of Human Services for further treatment and evaluation.

The Sheriff of Saline County, Arkansas is hereby directed to deliver Defendant to the care, custody and control of the Director of the Department of Human Services for said evaluation and treatment.

IT IS SO ORDERED THIS 15 day of Sept , 2011.

_____
Circuit Judge

Approved as to form:

_____
Andy Gill, Deputy Prosecutor

_____
Pete Lancaster, Defense Counsel